UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

---

FALK PANEL, LLC,                                    Case No. 26-cv-

      Plaintiff,                                            Hon.

v.

MOBAY, INC.,

      Defendant.

---

VARNUM LLP
Herman D. Hofman (P81297)
*Attorneys for Plaintiff*
Bridgewater Place, P.O. Box 352
Grand Rapids, MI 49501-0352
(616) 336-6000
hdhofman@varnumlaw.com

---

## COMPLAINT

Plaintiff FALK Panel LLC ("FALK"), through its counsel, Varnum LLP, hereby states for its Complaint against Defendant Mobay Inc. ("Mobay") as follows:

## NATURE OF ACTION

1. This is a breach-of-contract action arising from Mobay's failure to pay FALK for insulated metal panels and related materials that FALK manufactured on an expedited basis at Mobay's request.

2. Mobay signed FALK's purchase order and agreed to pay the full contract price prior to shipment but has failed and refused to remit any payment despite repeated demands. **Exhibit 1** (4/2025 Purchase Order).

3. As a result, FALK has been forced to store the finished products at its facility for approximately ten months, and FALK now seeks to recover the full contract price of $104,462.12, plus contractual interest, attorneys' fees, costs, and such other relief as this Court deems just and equitable. **Exhibit 2** (Invoice No. 4722).

## PARTIES, JURISDICTION AND VENUE

4. Plaintiff FALK is a Michigan limited liability company with its principal place of business located at 1782 Northridge Dr. NW, Walker, MI, 49544.

5. Defendant Mobay is a Virginia corporation with its principal place of business located at 4008 Old Shore Road, Blackstone, VA, 23824.

6. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. FALK is a citizen of Michigan for diversity purposes. "[T]he citizenship of a LLC is determined by the citizenship of all of its members." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). The sole member of FALK is FALK North America, Inc., a corporation. A corporation is considered to be a citizen both of its state of incorporation and of its principal place of business. *See Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 88-89 (2005). FALK North America, Inc., is incorporated and maintains its principal place of business in Michigan. Because the citizenship of an LLC is determined by the citizenship of its members, and FALK's sole member is a Michigan corporation, FALK is a citizen of Michigan for diversity purposes. *Roche*, 546 U.S. at 88-89; *Harvey*, 542 F.3d at 1080.

8. Mobay is a Virginia corporation with its principal place of business in Virginia. Thus, there is complete diversity of citizenship between FALK, a citizen of Michigan, and Mobay, a citizen of Virginia.

9. In addition, the parties agreed in the governing General Terms and Conditions that "[a]ll legal proceedings shall be instituted in the state or federal courts of the State of Michigan" and that "[e]ach Party irrevocably and unconditionally submits to the exclusive jurisdiction of such courts." **Exhibit 3** (FALK's Terms and Conditions) at p. 5 § 44.

10. Venue is proper in this Court both by statute pursuant to 28 U.S.C. § 1391(b)(2), as the events or omissions giving rise to the claim occurred in the Western District of Michigan, and because the parties each agreed in the governing terms and conditions of sale to consent to the exclusive jurisdiction of this Court.

11. This Court has personal jurisdiction over Mobay because Mobay consented to the jurisdiction of this Court in the governing terms and conditions, purposefully availed itself of the privilege of conducting business activities in Michigan by purchasing products from a Michigan-based manufacturer for delivery from Michigan, and Mobay's wrongful conduct at issue occurred, and foreseeably caused harm, in the Western District of Michigan.

## GENERAL FACTUAL ALLEGATIONS

12. FALK incorporates by reference all the allegations contained in the preceding paragraphs as if fully set forth herein.

### A. The Parties' Agreement

13. Mobay accepted and signed FALK's purchase quotation and purchase/delivery agreement on or about April 24, 2025, which set the commercial terms for the manufacture and

delivery of insulated metal panels and related materials for a project identified as the "Richmond Iowa Freezer." Ex. 1.

14. By signing FALK's purchase quotation, Mobay acknowledged and agreed to FALK's General Terms and Conditions, which were expressly incorporated into the purchase order, and to the standard warranty terms referenced therein. Ex. 3.

15. The General Terms and Conditions expressly provide that they "supersede any of Customer's general terms and conditions of purchase regardless of whether or when Customer has submitted its purchase order or such terms" and that "[a]cceptance of the quotation by Customer is a prerequisite to the purchase of the Products and shall operate as an acceptance of these Terms which are expressly incorporated into any order confirmation." *Id*. at p. 5 § 1.

16. Among other key terms, the agreed payment schedule required a 20% deposit upon order and an 80% balance to be paid prior to shipment, i.e., payment in full before FALK would release or ship the goods. Ex. 1 at p. 1.

17. On May 23, 2025, FALK issued Invoice No. 4722 to Mobay, itemizing the order, setting the total amount due at $104,462.12 (reflecting the cost of panels, related materials, delivery charges, and sales tax), and again stating the payment term "Due Before Shipping." Ex. 2 at p. 1.

      **B.**    **FALK's Performance and Mobay's Breaches**

18. In reliance on Mobay's contractual commitment to pay the full contract price prior to shipment, FALK proceeded on an expedited schedule and completed production of the panels and related materials in May 2025.

19. Despite FALK's full performance of its manufacturing obligations and despite repeated requests for payment, Mobay has failed and refused to remit any of the required funds.

4

20. As a result of Mobay's nonpayment, the finished products have remained at FALK's facility in Walker, Michigan, awaiting payment and release for approximately ten months.

21. Mobay's failure to pay constitutes a material breach of the agreed payment terms that Mobay accepted in the signed purchase order and that were reiterated in Invoice No. 4722.

### C.   FALK's Demand and Mobay's Admissions

22. On February 4, 2026, FALK, through its counsel, sent Mobay a formal demand letter demanding immediate payment of the full outstanding balance of $104,462.12 under Invoice No. 4722, and advising Mobay that failure to pay within five business days would result in FALK pursuing all available rights and remedies, including litigation. **Exhibit 4** (Demand Letter).

23. Following receipt of FALK's demand letter, Mobay CEO Damian McKenzie engaged in a series of communications with FALK's counsel acknowledging Mobay's outstanding obligation and expressing Mobay's purported commitment to paying FALK the amounts due. **Exhibit 5** (Emails).

24. On or about February 5, 2026, FALK's counsel and Mr. McKenzie spoke by telephone regarding the $104,462.12 that Mobay owed to FALK. *Id*. at p. 4. During that call, Mr. McKenzie acknowledged on behalf of Mobay that Mobay owed the outstanding amount to FALK and stated that Mobay was committed to paying FALK in full but needed additional time. *Id*. Mr. McKenzie agreed to provide, in writing, a specific payment plan with milestones and dates by Friday, February 6, 2026. *Id*.

25. Mr. McKenzie failed to provide the promised payment plan by the February 6, 2026, deadline. On February 7, 2026, FALK's counsel followed up in writing, advising Mr. McKenzie that if a detailed and specific payment plan was not received by close-of-business

5

Monday, February 9, 2026, FALK would move forward promptly with preparing and filing a lawsuit. *Id*.

28. On February 7, 2026, Mr. McKenzie responded, again acknowledging Mobay's obligation to FALK and stating that Mobay was "yet still committed to satisfying the amount owed," but indicating that Mobay was "in a very challenging financial position." *Id*. Mr. McKenzie promised to have a payment arrangement to FALK's counsel by close-of-business on Monday, February 9, 2026. *Id*.

27. On February 9, 2026, Mr. McKenzie proposed a payment of $10,000 in the first week of March 2026, with the possibility of a larger payment by the end of March, and monthly payments of at least $8,000 thereafter until the balance was paid in full. *Id*. at pp. 2-3. Mr. McKenzie also referenced two potential clients who had given "verbal commitment[s]" to purchase a portion of the panels that had been manufactured by FALK for Mobay, which Mr. McKenzie claimed would "generate all the funds needed to close this out entirely." *Id*.

28. On February 13, 2026, FALK's counsel responded with a counterproposal offering to accept weekly payments of $13,833.96 beginning February 16, 2026, through March 30, 2026. *Id*. at pp. 1-2.

29. FALK's counsel advised that if he did not receive confirmation of agreement to the plan and confirmation of the first weekly payment by February 16, 2026, FALK would have no choice but to move forward immediately with enforcement of its contractual remedies. *Id*. at p. 2.

30. On February 16, 2026, Mr. McKenzie responded that he would not commit to the proposed payment plan. *Id*. at p. 1. Yet, Mr. McKenzie admitted that "it is important that I fulfill my commitment to Falk." *Id*.

6

31. Despite Mr. McKenzie's repeated assurances on behalf of Mobay that Mobay would pay the amounts due to FALK, Mobay has not made any payment to FALK to-date, including not along the terms of the payment plan Mobay's own CEO proposed.

**D.     Applicable Contractual Provisions**

32. Section 5 of FALK's General Terms and Conditions provides that "[c]ustomer shall pay interest on all late payments at the lesser of the rate of 1.5% per month or the highest rate permissible under applicable law."  Ex. 3 at p. 1 § 5.

33. Section 5 further provides that "[c]ustomer shall reimburse FALK for all costs incurred in collecting any late payments, including, without limitation, attorneys' fees." *Id*.

34. Section 44 of FALK's General Terms and Conditions provides that the Terms and quotation "are governed by, and construed in accordance with the laws of the State of Michigan without giving effect to any conflict of laws provisions thereof that would result in the application of the laws of a different jurisdiction." *Id*. at p. 5 § 44.

35. FALK's General Terms and Conditions further provide that, while FALK may permit up to 30 days of temporary storage at its facility for finished products that cannot ship as a result of project interruptions or site delays, the customer will be solely responsible for all finished products held for later delivery, and FALK will not assume liability for such products. *Id*. at pp. 3-4 §§ 27, 41.

36. Mobay's products have remained at FALK's facility for approximately ten months awaiting payment and release, well beyond the 30-day temporary storage accommodation.  Mobay bears sole responsibility and risk for the goods during this extended period.

## **COUNT I - BREACH OF CONTRACT**

37.     FALK incorporates by reference all the allegations contained in the preceding paragraphs as if fully set forth herein.

38.     FALK and Mobay entered into a valid and enforceable contract, consisting of the signed purchase quotation and purchase/delivery agreement, the associated invoice, and FALK's General Terms and Conditions incorporated therein. Exs. 1-3.

39.     Under the parties' agreement, Mobay was obligated to pay a 20% deposit upon order and an 80% balance prior to shipment, for a total of $104,462.12, as set forth in Invoice No. 4722 with payment terms of "Due Before Shipping." Ex. 1 at p. 1.

40.     FALK fully performed its obligations under the parties' agreement by manufacturing the panels and related materials on an expedited schedule and completing production in May 2025, in reliance on Mobay's contractual commitment to pay prior to shipment.

41.     Mobay has materially breached the parties' agreement by failing and refusing to remit any payment to FALK, including both the 20% deposit and the 80% balance due prior to shipping, despite repeated demands for payment.

42.     Mobay's CEO, Damian McKenzie, has repeatedly acknowledged that Mobay owes FALK the amounts due under the parties' agreement, has repeatedly committed on Mobay's behalf to paying FALK the amounts owed, and has acknowledged the importance of fulfilling Mobay's "commitment to Falk" yet Mobay still has not paid FALK anything. Ex. 5.

43.     As a direct and proximate result of Mobay's breach, FALK has been damaged in an amount not less than $104,462.12, representing the full unpaid contract price. Ex. 1.

44.     FALK is further entitled, pursuant to Section 5 of the General Terms and Conditions, to recover interest on all late payments at the lesser of 1.5% per month or the highest

8

rate permissible under applicable law, accruing from the date payment was due, as well as all costs incurred in collecting such late payments, including, without limitation, attorneys' fees actually incurred in its efforts to collect amounts due from Mobay. Ex. 3.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff FALK respectfully requests that this Court enter judgment in its favor and against Defendant Mobay, awarding FALK the full unpaid contract price of $104,462.12 under Invoice No. 4722; contractual interest on all unpaid amounts at the rate of 1.5% per month (or the highest rate permissible under applicable law, if lower), accruing from the date payment was due until the date of judgment; all costs incurred in collecting the amounts due, including, without limitation, FALK's actual attorneys' fees incurred in attempting to collect the amounts due, as provided in Section 5 of the General Terms and Conditions; and such other and further relief as the Court deems just and equitable.

                                                Respectfully submitted,

                                                VARNUM LLP
                                                *Attorneys for Plaintiff*

Date: March 3, 2026                  By:   /s/ *Herman D. Hofman*
                                                      Herman D. Hofman (P81297)
                                                      Bridgewater Place, P.O. Box 352
                                                      Grand Rapids, MI 49501-0352
                                                      (616) 336-6000
                                                      hdhofman@varnumlaw.com

## **DEMAND FOR JURY TRIAL**

PLEASE TAKE NOTICE that Plaintiff FALK Panel LLC demands a jury trial in this case.

Respectfully submitted,

VARNUM LLP
*Attorneys for Plaintiff*

Date: March 3, 2026        By:   /s/ *Herman D. Hofman*
                                                Herman D. Hofman (P81297)
                                                Bridgewater Place, P.O. Box 352
                                                Grand Rapids, MI 49501-0352
                                                (616) 336-6000
                                                hdhofman@varnumlaw.com

18512743.1